1

2

3                                                          **O**

4                                                      NO JS-6

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   GRETTA M. BERNABE,            )   Case No. CV 10-02508 DDP (JEMx)
                                   )
12             Plaintiff,          )   **ORDER GRANTING DEFENDANT'S MOTION**
                                   )   **FOR SUMMARY JUDGMENT**
13        v.                       )
                                   )   [Docket No. 52]
14   UNITED STATES OF AMERICA,     )
                                   )
15             Defendant.          )
     _____)

16

17        Defendant and Counterclaim-Plaintiff United States of America

18   ("Defendant") brings this Motion for Summary Judgement ("Motion")

19   against Plaintiff and Counterclaim-Defendant Gretta M. Bernabe

20   ("Gretta Bernabe").  Having reviewed the parties' moving papers and

21   heard oral argument, the court grants the Motion and adopts the

22   following Order.

23   **I.   BACKGROUND**

24        There are no genuine disputes as to the following facts.

25   Pleasant Care Corporation and its four related subsidiaries

26   ("Pleasant Care") operated approximately thirty skilled nursing

27   facilities and residential care facilities, and had approximately

28   3,000 employees.  During the 2006 and 2007 payroll tax periods at

1  issue, Pleasant Care failed to pay to the Internal Revenue Service

2  ("IRS") all of the federal income and social security taxes it had

3  withheld from its employees' wages (collectively, "payroll" or

4  "trust fund" taxes).[1]  (Opp'n at 2.)  Emmanuel Bernabe was the

5  President of Pleasant Care.  Pleasant Care also had an Executive

6  Vice President, a Vice President of Finance, and a Compliance

7  Officer.  Gretta Bernabe was Pleasant Care's Secretary and

8  Treasurer.  (Id. at 3.)

9      Gretta Bernabe's salary was $86,847 in 2006 and $97,087 in

10 2007.  As part of her duties, Gretta Bernabe reviewed batches of

11 checks prepared by Accounts Payable and usually signed by the Vice

12 President of Finance.  The checks were grouped by expense priority.

13 Before August 2006, the first priority was payroll, including

14 payroll taxes.  In August 2006, Emmanuel Bernabe verbally

15 instructed Gretta Bernabe that payroll taxes were no longer first

16 priority.  (Mot. at 3-4.[2])  Pleasant Care's relevant checking

17 account required two signatures from the three authorized

18 signatories - Emmanuel Bernabe, Gretta Bernabe, and the Vice

19 President of Finance.  Gretta Bernabe typically reviewed the check

20 amounts and priorities, then provided the second signature.  (Id.

21

22      [1]  Pleasant Care filed for bankruptcy before the end of the
23 final tax period at issue.  (Opp'n at 2.)  In her Opposition,
   Gretta Bernabe claims, without explanation or citation, that
24 Defendant's tax calculations are therefore improper.  (Id. at 18.)
   Defendant, to the contrary, provides a detailed basis for its
25 calculations, taking the bankruptcy into account.  (Mot. at 19-21.)
   Accordingly, the court accepts Defendant's calculations and denies
26 Bernabe's conclusory argument.

27      [2]  Notwithstanding Gretta Bernabe's objections to Defendant's
   characterization of her duties, as discussed below, she does not
28 contest Defendant's basic description of Pleasant Care's financial
   procedures, all of which comes from her own deposition.

1   at 4-5.)  Gretta Bernabe also had a signature stamp for Emmanuel
2   Bernabe, which she sometimes used.  During the periods at issue,
3   Emmanuel Bernabe only reviewed a small portion of the checks signed
4   and stamped by Gretta Bernabe.  Gretta Bernabe signed approximately
5   200 checks per day, and signed and stamped at least one check for
6   more than $10,000.  (Id. at 5-6.)  She also signed checks paying
7   creditors other than the United States, knowing that the payroll
8   taxes had not been paid.  (Id. at 9.)

9        Gretta Bernabe's duties also included transferring funds from
10  Pleasant Care's general account to its payroll account, to ensure
11  there were sufficient funds to cover payroll.  In addition, she
12  prepared and signed Pleasant Care's quarterly federal tax returns,
13  and had some involvement in the hiring and firing of employees.
14  (Id. at 7-8.)

15       On the other hand, viewing the evidence in the light most
16  favorable to Gretta Bernabe, Emmanuel Bernabe made the major
17  financial and management decisions for Pleasant Care, and had the
18  final say on all decisions.  (Opp'n at 5-7.)  Emmanuel Bernabe also
19  assured Gretta Bernabe, who wanted to pay the payroll taxes, that
20  he had a plan to sell certain facilities so they could do so.  (Id.
21  at 9-10.)  Further, Emmanuel Bernabe was a dominating individual
22  who yelled at Gretta Bernabe.  (Id. at 10-11.)  Gretta Bernabe also
23  alleges that Emmanuel Bernabe required her to follow his specific
24  creditor payment instructions at all times, and that her official
25  job title therefore overstates her actual authority.  (Id. at 7-9.)

26       On September 30, 2009, the IRS sent notice of intent to assess
27  against Gretta Bernabe the trust fund recovery penalty ("TFRP")
28  provided by 26 U.S.C. § 6672 ("Section 6672").  On October 13,

1  2009, the IRS assessed the TFRP against Gretta Bernabe.  (Mot. at
2  9.)  After meeting the relevant procedural requirements, Gretta
3  Bernabe filed this action against Defendant on March 4, 2010,
4  alleging that the TFRP assessment was improper.  (Compl. ¶¶ 10-17.)

5       Defendant now seeks summary judgment that Gretta Bernabe is
6  liable for the TFRP under Section 6672.  Defendant argues that it
7  is entitled to summary judgment because the undisputed facts
8  demonstrate that Gretta Bernabe was 1) a "responsible person," who
9  2) willfully failed to pay the required payroll taxes.  Gretta
10 Bernabe contends, to the contrary, that there are genuine issues of
11 material fact as to these two elements.

12 **II.  LEGAL STANDARD**

13      Summary judgment is appropriate where "the movant shows that
14 there is no genuine dispute as to any material fact and the movant
15 is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
16 56(a).  Material facts are those "that might affect the outcome of
17 the suit under the governing law."  Anderson v. Liberty Lobby,
18 Inc., 477 U.S. 242, 248 (1986).  A genuine issue of fact exists if
19 "the evidence is such that a reasonable jury could return a verdict
20 for the nonmoving party."  Id.  The evidence must be viewed in the
21 light most favorable to the nonmoving party, with all justifiable
22 inferences drawn in its favor.  Id. at 255.

23      It is not enough, however, for the nonmoving party to rest on
24 the "mere allegations or denials of his pleadings."  Id. at 259.
25 Instead, the nonmoving party must go beyond the pleadings to
26 designate specific facts showing that there is a genuine issue for
27 trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The
28 "mere existence of a scintilla of evidence" in support of the

4

1  nonmoving party's claim is insufficient to defeat summary judgment.

2  <u>Anderson</u>, 477 U.S. at 252.

3      In a TFRP case, "the government bears the initial burden of

4  proof." <u>Oliver v. United States</u>, 921 F.2d 916, 919 (9th Cir.

5  1990).  The government may normally satisfy this burden "by

6  introducing into evidence its assessment of taxes due." <u>Id.</u>

7  "[T]he taxpayer then has the burden of proof with respect to both

8  his own claim and the government's counterclaim." <u>Id.</u>  Here, there

9  is no dispute that the government satisfied its initial burden by

10 introducing its relevant tax assessments into evidence.  (Mot. at

11 10-11.)  Gretta Bernabe therefore bears the ultimate burden of

12 proving that she does not meet at least one of the two TFRP

13 elements under Section 6672.

14 **III. DISCUSSION**

15      The Internal Revenue Code requires employers to withhold

16 federal social security and individual income taxes from their

17 employees' wages. <u>Davis v. United States</u>, 961 F.2d 867, 869

18 (citing 26 U.S.C. §§ 3102(a) and 3402(a)).  Employers collect these

19 tax amounts each salary period, but pay them to the IRS on a

20 quarterly basis.  In the interim, the employer holds the collected

21 taxes in trust for the United States. <u>Davis</u>, 961 F.2d at 869.  If

22 an employer ultimately fails to pay over the collected taxes, the

23 government still credits the employees with the payment.

24 Accordingly, to protect against revenue losses, the tax code

25 provides the United States a variety of ways to recover the taxes

26 from the employer. <u>Id.</u> (citing <u>Slodov v. United States</u>, 436 U.S.

27 238, 243 (1978), and 26 U.S.C. §§ 6321, 6672, 7202, and 7215).

28

1        Section 6672, in particular, authorizes the government to hold
2   "responsible persons," such as corporate officers, personally
3   liable for a civil penalty equal to the amount of the delinquent
4   trust fund taxes - i.e. the trust fund recovery penalty.  <u>See</u>
5   <u>Davis</u>, 961 F.2d at 869-70.  Under Section 6672, a responsible
6   person is anyone "required to collect, truthfully account for, and
7   pay over" the trust fund taxes.  Such a person is liable for the
8   TFRP if they willfully fail to comply with these duties.
9        The courts have further elaborated on these two elements.  In
10  the Ninth Circuit, "responsibility is a matter of status, duty, and
11  authority."  <u>Purcell v. United States</u>, 1 F.3d 932, 937 (9th Cir.
12  1993) (internal quotation marks omitted).  An individual is
13  therefore a responsible person if she "had the authority required
14  to exercise significant control over the corporation's financial
15  affairs, regardless of whether [she] exercised such control in
16  fact."  <u>Id.</u>  Moreover, "[i]nstructions from a superior not to pay
17  taxes do not . . . take a person otherwise responsible under
18  section 6672(a) out of that category."  <u>Id.</u> (quoting <u>Brounstein v.</u>
19  <u>United States</u>, 979 F.2d 952, 955 (3rd Cir. 1992)).
20       The Ninth Circuit has also considered various factors, none of
21  which is alone determinative, in deciding responsible person
22  status.  An individual is more likely to be found responsible if he
23  or she: 1) holds corporate office; 2) has check-signing authority;
24  3) can hire and fire employees; 4) manages the day-to-day
25  operations of the business; 5) prepares payroll tax returns; 6)
26  signs financing contracts; and 7) determines financial policy.  <u>See</u>
27  <u>United States v. Jones</u>, 33 F.3d 1137, 1141 (9th Cir. 1994); <u>Jordan</u>
28  <u>v. United States</u>, 359 F. App'x 881, 882 (9th Cir. 2002).

1        "Willfulness," for purposes of Section 6672, means only "a

2   voluntary, conscious and intentional act to prefer other creditors

3   over the United States."  Buffalow v. United States, 109 F.3d 570,

4   573 (9th Cir. 1997) (internal quotation marks omitted).  If a

5   responsible person knows that payroll taxes are delinquent, and

6   uses corporate funds to pay other expenses, the failure to pay the

7   taxes is willful.  See id.

8        Here, contrary to Gretta Bernabe's arguments, there is no

9   genuine dispute whether she is a responsible person.  Applying the

10  aforementioned factors:  Gretta Bernabe was a high-ranking officer

11  of a large corporation with multiple subsidiaries.  She was one of

12  three officers with authority to sign corporate checks, and she did

13  in fact sign hundreds of checks per day during the relevant tax

14  periods, including checks for many thousands of dollars.  Gretta

15  Bernabe also had at least some involvement and input in hiring and

16  firing employees.  Further, while two signatures were required to

17  endorse a check, she had and sometimes used a stamp for the

18  President's signature - thereby endorsing checks without any other

19  approval.  Gretta Bernabe was also involved in important day-to-day

20  financial operations, such as reviewing batches of checks for

21  amounts and expense priority, transferring sufficient funds to

22  payroll, and preparing and signing quarterly federal tax returns.

23  For all these reasons, she was clearly a responsible person, with

24  significant control over Pleasant Care's financial affairs.

25       It is true that, viewing the evidence in Gretta Bernabe's

26  favor, Emmanuel Bernabe made the major business decisions and had

27  the final say on all decisions.  Most relevant here, he required

28  Gretta Bernabe to change the priority status of payroll taxes.  But

7

1    under Ninth Circuit precedent, following orders does not protect an

2    otherwise responsible person from Section 6672 liability.[3]  Here,

3    as discussed, all of the evidence establishes that Gretta Bernabe

4    was a responsible person.  Therefore, that she was following

5    Emmanuel Bernabe's instruction with regard to payroll tax priority

6    is immaterial.  Indeed, the undisputed facts establish that Gretta

7    Bernabe exercised substantial financial authority outside of

8    Emmanuel Bernabe's control, as he did not review the majority of

9    the checks that she authorized.

10        Finally, as to wilfulness, there is no dispute that Gretta

11   Bernabe signed checks paying creditors other than the United

12   States, knowing that the payroll taxes had not been paid.  Under

13   Ninth Circuit precedent, it is irrelevant that Gretta Bernabe

14   allegedly wanted to pay the taxes, was verbally abused by Emmanuel

15   Bernabe, and was reassured by him that the taxes would be paid.  As

16   the Buffalow court explained, addressing a similarly sympathetic

17   situation, neither motive nor reliance can excuse a knowing failure

18   to pay trust fund taxes.  109 F.3d at 573-74.  Here, Gretta Bernabe

19   knew that Pleasant Care's payroll taxes were delinquent, yet paid

20   other creditors.  She therefore willfully failed to pay the taxes.

21

22

23   ///

24   ///

25

26        [3]  In so holding, the court does not endorse Defendant's
27   position that there is no so-called "Nuremberg defense" to
     liability.  The court only follows binding precedent that an
28   otherwise responsible person is not excused by orders from his or
     her superior.

IV.   **CONCLUSION**

     For all these reasons, the court grants Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.


Dated: December 19, 2011

                                        DEAN D. PREGERSON
                                        United States District Judge

9